UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JONI LEACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-1331 PLC |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Joni Leach seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her applications for Disability Insurance Benefits (DIB) and Disabled Widow's Benefits (DWB) under Title II of the Social Security Act for the period between April 7, 2008 and June 30, 2008.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.     Background and Procedural History**

In September 2019, Plaintiff, who was born in May 1958, filed applications for DIB and DWB, alleging that she was disabled as of December 31, 2002, as a result of anxiety disorder, fibromyalgia, "neck and back issues, C5 and C6, bulging disc, disc distrution (sic), L2 and L3 L3 L4, [scoliosis], [schmorl] node," osteopenia in spine and hips, irritable bowel syndrome, bilateral carpal tunnel, plantar fasciitis, migraines, "heart murmur and other issues," post-traumatic stress

---

[1] With respect to DIB, Plaintiff's earnings record demonstrates she has sufficient quarters of coverage to remain insured through June 30, 2008. (Tr.  12, 300). To be entitled to benefits, Plaintiff has to show she was disabled prior to the expiration of her insured status. See 20 C.F.R. §404.130; Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009). In order to obtain DWB, Plaintiff has to establish that her disability began prior to April 30, 2008, the end of the seven-year period after her spouse passed away. (Tr.  12, 300). See 20 C.F.R. § 404.335(c)(1).

disorder, arthritis, "blood issues," hair loss due to stress, sleep issues, pain, and memory issues. (Tr.  11, 67-68, 183, 287) Plaintiff subsequently amended her alleged disability onset date to April 7, 2008. (Tr.  278). The Social Security Administration (SSA) denied Plaintiff's claims, and she filed a timely request for a  hearing before an administrative law judge (ALJ).  (Tr. 67-73, 74-81, 98, 99-100)  The SSA granted Plaintiff's request for review and conducted a hearing on January 12, 2021.[2]  (Tr. 31-59, 98-100)

On February 1, 2021, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 11-30) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-5, 6-7, 180-182)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.    Evidence Before the ALJ[3]

### A.  Plaintiff's Testimony

Plaintiff was sixty-two years old at the time of the hearing and had a high school diploma. (Tr.  42). Plaintiff's husband died on April 7, 2001, and she currently lives with her fiancé. (Tr. 42, 44)

Plaintiff's work history included positions as a cleaner and as an Avon representative. (Tr. 43-44)  Between May 2001 and January 2003, Plaintiff worked nights as a cleaner which required her to lift 40 to 50 pounds. (Tr.  43)  In August 2002, Plaintiff began experiencing carpal tunnel pain in her right hand and then "strained her back" in October 2002 while at work. (Tr.  48) In

---

[2] The ALJ also conducted a short hearing on September 29, 2020. (Tr.  60-66)  At that time, Plaintiff was self-represented, and the ALJ advised Plaintiff of her right to representation and continued the hearing to allow Plaintiff time to secure representation to assist her with her case. (Tr.  62-66)

[3] Because Plaintiff does not challenge the ALJ's determinations regarding her alleged mental impairments and their resulting effect on her residual functional capacity, the Court limits its discussion of the evidence to Plaintiff's alleged physical impairments.

November 2002, Plaintiff's physician put her on light duty and restricted her to lifting no more than 20 pounds. (Tr.  48)  Plaintiff's employer did not adjust her duties, and Plaintiff's physician placed her on sedentary duty and then "on leave" for several weeks. (Tr.  49)  Plaintiff's employer fired her after she returned to work in early January 2003.

Plaintiff began her Avon business in 1991 and typically worked 10 hours per week. [4] (Tr. 304, 312)  Plaintiff's most profitable year selling Avon was in 2006, with an annual net profit of $3,633, at which time she worked approximately 12 hours per week.[5]  (Tr.  47)  As an Avon representative, Plaintiff would take orders over the phone and deliver the products and the product books to her customers. (Tr.  45)  Plaintiff stated the most weight she lifted was the "boxes of books" which "might have been 10 pounds[.]" (Tr.  46). Plaintiff's fiancé "would help [her] carry…the products" for sorting "and then, of course, the bags [were] a little bit heavier." (Tr.  46) Plaintiff stopped selling Avon in October 2020 when she could no longer deliver the products because she "hurt all the time, my shoulders, my arms," and she "gets these spasms so bad" she cannot drive. (Tr.  46-47)

Prior to March 2008, Plaintiff experienced pain in her low back, cervical spine, and hands. (Tr.  50). Plaintiff then began experiencing "even more pain in different areas[,]" and in March 2008 her primary care physician "assumed it was fibromyalgia" and referred her to James Speiser, M.D., a rheumatologist. (Tr.  50-51) In April 2008, Plaintiff had pain in her neck, shoulders, arms, hips, knees, back and hands, which Dr. Speiser "diagnosed" as fibromyalgia. (Tr.  50)  Plaintiff testified that, due to the combination of her impairments at that time, she could stand for 15 minutes

---

[4]  SSA determined that Plaintiff's Avon business did not constitute substantial gainful activity because it was clear her monthly earnings were below the threshold amount. (Tr.  318-319)
[5]  The record includes Plaintiff's tax returns for years 2002 through 2018 , with the exception of 2006. (Tr.  207-250)  Plaintiff's tax documents demonstrate her Avon business resulted in a net profit of $1,183 in 2008. (Tr.  220)  This was based on $63,574 in gross sales minus $45,949 for the cost of the goods and $16,442 in business expenses. (Tr.  220)

but could not "stand and walk for 15" minutes due to "widespread" pain in her hips, back, and feet. (Tr. 51-52)  Also at that time, Plaintiff could lift less than 10 pounds because she had "very much weakness in [her] arms." (Tr. 52)  Plaintiff underwent a carpal tunnel release in August 2008 on her right hand and was "good for years" but is "starting to get trigger fingers" in her middle and index fingers. (Tr. 53)

B.  <u>Vocational Expert</u>

Vocational expert John Dolan also testified at the hearing. (Tr. 53)  Mr. Dolan testified Plaintiff's past work as a commercial cleaner was unskilled and performed at the medium level and that her work as an Avon representative was semi-skilled and performed at the light level. (Tr. 54)

The ALJ asked Mr. Dolan to consider a hypothetical individual with Plaintiff's age, education, and work experience who could perform light work with the following limitations:

> never climb ladders, ropes, or scaffolds, or crawl, occasionally climb ramps, stairs, balance, stoop, kneel, crouch, frequently handle and finger as well as reach, avoid concentrated exposure to excessive vibration, and avoid all exposure to unprotected heights

(Tr. 55) Mr. Dolan concluded that such an individual could not perform the job of a commercial cleaner but could perform Plaintiff's past work as a cosmetics and toiletries sales person. (Tr. 55) Mr. Dolan testified the individual could perform other jobs such as housekeeping cleaner, fast-food counter worker, and cashier which are all light unskilled jobs. (Tr. 55) The ALJ modified the hypothetical to sedentary work with the same restrictions. (Tr. 55-56) In response to the modified hypothetical, Mr. Dolan testified the individual could not perform Plaintiff's past work but would be able to perform the positions of food and beverage order clerk, assembler, and telephone solicitor which are all unskilled sedentary positions. (Tr. 56-57).

4

C.  Work History, Functional, and Disability Reports

In a work history report and a disability report received by SSA on October 23, 2019, Plaintiff reported working as an Avon representative from 2001 to 2018 two days per week for five hours a day. (Tr. 279-280, 289) Plaintiff stated this job's daily requirements included walking for 4 hours; standing for 4 hours; sitting for 3 hours; stooping and crouching for 2 hours; and reaching and handling small objects for 5 hours. (Tr.  280, 289)  Plaintiff claimed the heaviest weight she lifted was 20 pounds but that she frequently[6] lifted 25 pounds. (Tr.  280, 289)

In a functional report filed with SSA on November 18, 2019, Plaintiff stated she had "been struggling for many years to just stay self-employed with Avon" and that she was no longer able to "function at doing this job any longer." (Tr.  321)  Plaintiff suffered from fatigue due to a sleep disorder and a "lack of energy due to fibromyalgia." (Tr.  321)  Plaintiff reported difficulties in attending to her personal care and that she makes one "quick meal" a day. (Tr.  322- 23)  Plaintiff was "not totally able to do many chores" but forces herself to do them because she does not "have anyone else to do them for [her]." (Tr.  323)  Plaintiff tries "to get out 1 or 2 days a week to deliver Avon orders, if possible" but her ability to do so is limited by her pain level. (Tr.  324)  Plaintiff drives but is limited due to her chronic pain, muscle spasms, inflammation, and weakness in her shoulders and arms. (Tr.  324)  Plaintiff spends approximately one hour every two weeks shopping for groceries and gifts. (Tr.  324)  With respect to her hobbies and interests, Plaintiff stated she was "unable to do anything that [she] once was able to do before [her] car accident and [her] fibromyalgia diagnosis" and that her quality of life has "diminished extremely" as she has aged. (Tr.  325)  In July 2020, Plaintiff reported continuing to take orders and make deliveries for her Avon business five to seven days per month, but that she was struggling to do so. (Tr.  334)

---

[6]  The forms define "frequently" as one-third to two-thirds of the workday. (Tr.  280, 289)

D.  Opinions of the State-Agency Consultants

In the SSA's Disability Determination Explanations denying Plaintiff's initial claims for benefits, the SSA concluded Plaintiff had the medically determinable, non-severe impairments of fibromyalgia and anxiety. (Tr.  67-73, 74-81)  SSA included the opinions of two State-agency consultants, Daniel Gwartney, M.D. and Linda Skolnick, Psy. D.,[7] in the determination explanations as support. (Tr.  67-73, 74-81)

On November 29, 2019, Dr. Gwartney reviewed the record and opined there was "no listing level physical impairment present for [the] relevant period[.]" (Tr.  71) Dr Gwartney observed that Plaintiff's medical records contained a May 2009 clinical diagnosis of fibromyalgia but the record contained "no exam findings approaching listing level severity." (Tr. 71) Dr. Gwartney concluded the record contained "[i]nsufficient evidence" and that the "absence of functional data preclude[d] [a] determination." (Tr.  71)  In reaching this conclusion, Dr. Gwartney considered the medical records provided, including: (1) a January 2004 independent medical examination report authored by Bruce Schlafly, M.D., a board certified orthopedist, finding cervical and lumbar spine degenerative disc disease with herniation but that Plaintiff maintained 90% range of motion, and bilateral carpal tunnel syndrome but intact grip strength; (2) treatment notes of Rene Winterberger, D.O., Plaintiff's primary care physician, from an March 10, 2008 examination noting pain with stiffness in Plaintiff's arms from her shoulder to her elbows and legs from her hips to her knees but effective ambulation; and (3) treatment notes of Barbara Caciolo, M.D., from May 15, 2019 noting a diagnosis of fibromyalgia. (Tr.  71, 363, 390-394, 398-399)

---

[7] Dr. Skolnick opined that Plaintiff had the medically determinable impairment of anxiety but that the record contained insufficient evidence for the doctor to evaluate Plaintiff's abilities in the four broad functional areas. (Tr.  71-72).

E.  Medical Records

In regard to Plaintiff's medical records, the Court adopts the facts that the Commissioner admitted and that Plaintiff set forth in her statement of material facts. [ECF Nos. 18-1, 19-1] The Court also adopts the additional facts contained in the Commissioner's response to Plaintiff's statement of facts because Plaintiff did not dispute them.[8] [ECF No. 19-1]

III.    Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. Id. Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a), (c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal

_____

[8] Relevant medical records are discussed in detail below.

impact on [the claimant's] ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).   At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a), (d).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. §§ 404.1520(a), (e), 416.920(a), (e). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled.  20 C.F.R. §§ 404.1520(g).

**IV.     ALJ's Decision**

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since April 7, 2008, the amended alleged onset date; and (2) had the severe impairments of degenerative disc disease of the cervical and lumbar spine, obesity, and bilateral carpal tunnel syndrome. (Tr.  14) The ALJ concluded Plaintiff had the non-severe impairment of anxiety. (Tr.  14-15) The ALJ also found Plaintiff's alleged impairment of fibromyalgia was not medically determinable because the record did not demonstrate that Plaintiff met the diagnostic criteria for establishing the disease and that it failed to meet the durational requirement for a severe impairment. (Tr.  15-16) Despite these findings, the ALJ stated he considered Plaintiff's "ongoing myalgias" in determining her residual functional capacity. (Tr.  16) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr.  16-17)

Based on his review of the record and Plaintiff's testimony, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr.  18) Plaintiff alleged she was unable to work due to chronic pain, inflammation, fatigue, and weakness in her neck, shoulders, and arms which resulted in difficulty with sitting, standing, walking, lifting, squatting, bending, kneeling, climbing, and using her hands. (Tr.  18) The ALJ found Plaintiff's alleged limitations were not supported by the medical evidence, including objective testing and treatment notes frequently demonstrating unremarkable physical examinations, and Plaintiff's conservative treatment and work history. (Tr.  18-21) Specifically, the ALJ concluded "there is insufficient objective medical evidence to support the claimant's

allegations as to her limitations, particularly in standing and walking, to support a sedentary exertional level." (Tr. 21)

The ALJ found Dr. Gwartney's opinion that there was insufficient evidence to support a finding of a severe physical impairment or resultant functional limitations was consistent with the evidence before Dr. Gwartney but that additional evidence received after his opinion was offered supported a finding of severe physical impairments and limitations resulting therefrom.[9] (Tr. 21)

The ALJ determined Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps and stairs, balance, stoop, kneel and crouch; frequently handle and finger; frequently reach; should avoid concentrated exposure to excessive vibration; and avoid all exposure to unprotected heights.

(Tr. 17) Based on the vocational expert's testimony, the ALJ concluded Plaintiff was unable to perform any past relevant work. (Tr. 22)  However, based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as housekeeping cleaner and cashier.[10] (Tr. 23)  The ALJ therefore concluded Plaintiff was not disabled. (Tr. 23-24)

## V.    Discussion

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because it is unsupported by any medical evidence, the ALJ failed to fulfill his duty to develop the

---

[9] Similarly, the ALJ noted that while Dr. Skolnick found insufficient evidence as to Plaintiff's alleged anxiety to provide an opinion as to functional limitations, additional evidence presented at the hearing level provided the ALJ with enough information to evaluate Plaintiff's alleged impairment and conclude that it was non-severe.

[10] Although Mr. Dolan testified that the job of fast-food counter worker could be performed within the hypothetical presented by the ALJ, the ALJ found Mr. Dolan's testimony was potentially inconsistent with job's description in the Dictionary of Occupational Titles, which states this job requires "constant reaching[.]" (Tr. 23) Consequently, the ALJ excluded this job from consideration. (Tr. 23)

record, and the ALJ did not conduct a proper pain evaluation. [ECF No. 18]  Specifically, Plaintiff

contends there is no medical opinion evidence in the record addressing Plaintiff's physical ability

to function in the workplace and that the ALJ failed to sufficiently develop the record because this

evidence, as well as some of Plaintiff's medical records, were absent from the record. [ECF No.

18] Plaintiff further contends the ALJ erred in finding Plaintiff's fibromyalgia was not a medically

determinable impairment because Dr. Speiser's April 2008 examination confirmed a sufficient

number of positive trigger points to meet the 1990 American College of Rheumatology (ACR)

criteria as set forth in Section II.A of Social Security Ruling (SSR) 12-2p. [ECF No. 18]

In response, the Commissioner asserts the ALJ properly evaluated all of the evidence in

the record in rendering the RFC and that the determination is supported by substantial evidence.

[ECF No. 19] The Commissioner contends the ALJ developed the record to the extent possible

given the distant time frame involved in Plaintiff's claim, particularly in light of counsel's

assurances to the ALJ that the record was complete. [ECF No. 19]  The Commissioner further

argues the ALJ properly evaluated Plaintiff's subjective reports of pain and disabling symptoms,

including considering the lack of objective medical findings to support Plaintiff's allegations and

Plaintiff's conservative treatment.  [ECF No. 19]  Finally, the Commissioner asserts the ALJ

correctly found that the medical records did not demonstrate that Plaintiff met the criteria for a

fibromyalgia diagnosis and that, even if the ALJ erred, the alleged error is harmless because the

ALJ considered Plaintiff's myalgias in determining Plaintiff's RFC. [ECF No. 19]

    A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C.

§ 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind

would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d

1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B. RFC

Plaintiff challenges the ALJ's determination of her physical RFC, contending it is not supported by medical opinion evidence and was based on an incomplete record and an inadequate evaluation of Plaintiff's pain.  [ECF No. 18]  RFC is the most a claimant can do in a work setting despite that claimant's physical or mental limitations. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. §§ 404.1545(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." Kraus v. Saul, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 404.1545(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). "An administrative law judge may not draw upon his own inferences from medical reports." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

1.  Medical Opinion Evidence

Plaintiff challenges the ALJ's physical RFC asserting that it is not supported by substantial evidence because there is no medical opinion evidence in the record "addressing how the various positive and negative objective findings in the record relate to Plaintiff's physical ability to function in the workplace." [ECF No. 18] Plaintiff argues the ALJ was not qualified to assess Plaintiff's RFC on the basis of bare medical findings, and without a medical advisor's assessment, the ALJ's RFC was not supported by substantial evidence. [ECF No. 18]  In response, the Commissioner argues the ALJ properly evaluated all of the evidence in the record in rendering the RFC and that the determination is supported by substantial evidence.  [ECF No. 19] Specifically, the Commissioner asserts that the "[m]ild objective findings and conservative treatment" were a sufficient basis for the ALJ to determine Plaintiff could perform light work. [ECF No. 19]

Contrary to Plaintiff's assertion, the record contains some medical opinion evidence regarding Plaintiff's impairments and the functional limitations resulting from those impairments, and the ALJ's determination reflects that he considered this evidence in determining Plaintiff's RFC. The ALJ stated in the decision that he considered the opinions of Dr. Gwartney, the State-

agency medical consultant at the application level, and Dr. Schlafly, an independent medical examiner for Plaintiff's workers' compensation claim, in making his determination.[11] (Tr. 21-22)

In January 2004, Dr. Schlafly reviewed Plaintiff's medical records and conducted a physical examination of Plaintiff in relation to her workers' compensation claim for carpal tunnel syndrome. (Tr. 390- 394) Dr. Schlafly's report provided workers' compensation disability ratings for Plaintiff's chronic neck and low back issues related to an April 1999 motor vehicle accident and her bilateral carpal tunnel syndrome related to her workplace injury. (Tr. 21-22, 390-394) The ALJ found Dr. Schalfly's disability ratings to be "not persuasive" because the program criteria for workers' compensation are unique to that program and were provided four years before the amended onset date, however, the ALJ did "consider the objective observations and clinical findings from the independent medical examination for longitudinal purposes." (Tr. 21-22)

The ALJ also considered the November 2019 opinion of Dr. Gwartney, who concluded there was insufficient evidence to support a finding that Plaintiff had a severe physical impairment or functional limitations during the relevant period. (Tr. 21, 71) As already noted, Dr. Gwartney's opinion was based upon his review of Dr. Schlafly's report regarding Plaintiff's cervical and lumbar spine degenerative disc disease and bilateral carpal tunnel syndrome, treatment notes from Dr. Winterberger's March 2008 examination noting Plaintiff's complaints of pain with stiffness in her arms and legs, and treatment notes from Dr. Caciolo's May 2009 examination diagnosing Plaintiff with fibromyalgia. (Tr. 71, 363, 390-394, 398-399) The ALJ concluded that Dr. Gwartney's opinion that there was insufficient evidence to support a finding that Plaintiff had a

---

[11] The ALJ also considered the opinion of Dr. Skolnick, the State-agency medical consultant at the application level, regarding Plaintiff's mental impairment of anxiety. (Tr. 21) Plaintiff does not contest the ALJ's determination that Plaintiff's anxiety was non-severe or the ALJ's mental RFC determination.

severe physical impairment or functional limitations during the relevant period was consistent with the evidence before Dr. Gwartney. (Tr.  21)

Dr. Gwartney's opinion constituted a medical opinion finding that Plaintiff had not demonstrated she had a severe physical impairment or any functional limitations resulting therefrom.[12] (Tr.  71) This is effectively a finding that Plaintiff has no functional limitations and could perform the full range of work at any level.  See McReynolds v. Berryhill, 341 F. Supp. 3d 869, 880 (N.D. Ill. Oct. 20, 2018) (opinions of a consultative examiner that the claimant had no work-related limitations and state-agency physicians' opinion that the claimant had no severe physical impairment support a finding that the claimant had no limitations related to her impairments).  Despite Dr. Gwartney's opinion, the ALJ concluded that "additional evidence received after this opinion was offered supports a finding of severe physical impairments and limitations resulting therefrom." (Tr.  21)

Specifically, the ALJ found that the additional evidence in the record supported a finding that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spines, obesity, and bilateral carpal tunnel syndrome and that those impairments, as well as Plaintiff's non-severe impairment of anxiety and alleged but not medically determinable fibromyalgia, resulted in functional limitations. (Tr.  16, 20-21)  The ALJ concluded Plaintiff's cervical and lumbar degenerative disc disease, further complicated by her obesity, limited her to work at the light exertional level and the recommended postural and environmental limitations. (Tr.  20)  The ALJ explained that the light exertional level and the limitation of frequent handling and fingering accounted for Plaintiff's carpal tunnel syndrome as well as Plaintiff's initial

---

[12] Again, a "severe impairment," is defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(a), (c).

conservative treatment and successful carpal tunnel release surgery on the right side. (Tr.  21) The

ALJ also considered Plaintiff's ongoing myalgias in assessing the light exertional level with the

additional postural and manipulative limitations and the limitations on exposure to vibration. (Tr.

16)

> Under the regulations, work at the light exertional level involves:
>
> lifting no more than 20 pounds at a time with frequent lifting or carrying of
> objecting weighing up to 10 pounds. Even though the weight lifted may be very
> little, a job is in this category when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some pushing and pulling of arm
> or leg controls. To be considered capable of performing a full or wide range of light
> work, you must have the ability to do substantially all of these activities.

20 C.F.R. §416.967(b). Social Security Ruling 83-10 further explains that light work involves

standing or walking for "approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL

31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983).

The ALJ based these limitations on the evidence in the record, including the medical

opinion evidence, the medical records, and Plaintiff's subjective complaints, sporadic and

conservative medical treatment, and work history as a cleaner. (Tr.  20-21) While the ALJ

considered Plaintiff's subjective complaints of pain and disabling symptoms, he found them to be

inconsistent with the other evidence in the record. The ALJ specifically "did not find persuasive

evidence in the record to support a sedentary exertional level as [Plaintiff] alleged[,]" noting there

was  "insufficient objective medical evidence to support the claimant's allegations as to her

limitations, particularly in standing and walking[.]"[13] (Tr.  20-21)

---

[13] The regulations define sedentary work as lifting no more than 10 pounds at a time and
occasional lifting or carrying small objects, walking, and standing. 20 C.F.R. §416.967(a). Sedentary jobs
generally require standing and walking for approximately 2 hours of an 8-hour workday.  SSR 83-10,
1983 WL 31251, at *5 (Soc. Sec. Admin. Jan. 1, 1983).

With regard to Plaintiff's chronic neck and back pain, which began after a motor vehicle accident in 1999, the ALJ noted that MRIs of Plaintiff's cervical and lumbar spines showed right paracentral disc extrusion at the C5-C6 with slight cord indentation and diffuse bulging of the C6-7 disc, and a small central disc extrusion at L5-S1 and minor degenerative changes at L2 and L3. (Tr.  18, 358, 439)  During a July 1999 examination, Daniel Kitchens, M.D., noted Plaintiff experienced no pain with range of motion of her cervical or lumbar spines, normal motor strength, intact sensation, and steady gait. (Tr.  360-361)  Dr. Kitchens recommended conservative treatment and Plaintiff underwent physical therapy and chiropractic treatment, was prescribed pain medication, and saw a pain specialist. (Tr.  361, 391-92)  Plaintiff worked as a night cleaner at the medium exertional level in 2001 and 2002, where she developed carpal tunnel syndrome and re-injured her back and she was eventually fired for being unable to meet the lifting requirements of the job. (Tr.  19)

In 2004, Dr. Schlafly reviewed Plaintiff's medical records and conducted an independent medical examination related to Plaintiff's workers' compensation claim for carpal tunnel syndrome. During the examination, Plaintiff was able to walk without any limp, heel- and toe-walk,  step onto a footstool, and squat and rise on her own power.  (Tr.  390-394) Plaintiff had normal leg strength and a straight leg raise test, and minimal tenderness to palpation over her spine although flexion of the low back produced pain. (Tr.  19, 390-394) Plaintiff demonstrated 90 percent range of motion in her cervical and lumbar spines, and good range of motion in her hips, knees, and ankles. (Tr.  393).  With regard to her carpal tunnel syndrome, Dr. Schlafly observed that Plaintiff had good strength and range of motion except for a slight loss of full flexion of the left small finger. (Tr. 19, 390-394)  Plaintiff had a positive Phalen's test bilaterally and a positive Tinel's sign on the left and a negative on the right.  (Tr.  19, 390-394) Dr. Schlafly diagnosed

bilateral carpal tunnel syndrome and recommended right-hand surgery with the possibility of surgery or a cortisone injection on the left. (Tr. 19, 390-394) Plaintiff testified that the carpal tunnel release surgery on the right was completed in August 2008 and that her hand was "good for years[.]" (Tr. 19, 53)

Plaintiff's treatment notes from her 2006 and 2007 well woman examinations noted her complaints of chronic neck and back pain but her physical examinations were otherwise unremarkable. (Tr. 19, 365-66) Furthermore, a January 2011 MRI of Plaintiff's lumbar spine showed only mild degenerative changes, without significant progression from prior imaging. (Tr. 20, 532)

With respect to Plaintiff's fibromyalgia, in March 2008 Plaintiff reported to her primary care physician experiencing "achy pain" with stiffness from her shoulder to her elbows and from her hips to her knees. (Tr. 20, 363) A physical examination showed no tenderness in her shoulders, elbows, hips or knees and full range of motion in both her shoulders and knees. (Tr. 20, 363) Plaintiff's primary care physician referred her to Dr. Speiser, a rheumatologist, whom she saw in April 2008. (Tr. 603) Dr. Speiser noted tenderness at multiple trigger points and noted a "most likely diagnosis" of fibromyalgia, and recommended changes to her medications and a six-week follow up. (Tr. 20, 603-604) The record does not demonstrate Plaintiff sought any additional treatment for this condition until she sought a second opinion from Dr. Caciolo in May 2009. (Tr. 20, 398-99)

In Dr. Caciolo's treatment notes, she wrote Plaintiff had "severe fibromyalgia" with her symptoms being "miserable, whole body hurts" with the worst pain being in her "neck [and] shoulder/neck" area. (Tr. 398) Plaintiff reported her onset date was February 2008, and that Dr. Speiser prescribed Lyrica but that it caused swelling and increased her pain. (Tr. 398) Plaintiff

stated she "didn't like" that Dr. Speiser "kept pushing the issue to try antidepressants[.]" (Tr. 398) Dr. Caciolo noted she "concur[red]" with the diagnosis of fibromyalgia and that she had "no specific [treatment] to recommend other than Cymbalta vs Savella" but Plaintiff was "reluctant to take [those medications]." (Tr. 399)

In addition to this evidence, the record demonstrates that Plaintiff worked part-time as an Avon representative at the light exertional level from 1991 through 2020. Plaintiff reported that her job as an Avon representative typically required, on a daily basis, standing for 4 hours; walking for 4 hours; sitting for 3 hours; stooping and crouching for 2 hours; and reaching and handling small objects for 5 hours. (Tr.  280, 289)  Plaintiff stated she frequently lifting 25 pounds. (Tr. 280, 289)  Furthermore, Plaintiff testified to working at the medium exertional level at her cleaning position in 2001 and 2002, after the onset of her cervical and lumbar spine conditions in 1999. (Tr. 43, 54)

In determining Plaintiff's RFC, which included numerous restrictions accounting for Plaintiff's physical impairments, the ALJ properly considered the medical opinion evidence, the medical records, and other evidence in the record.  Upon review of the record as a whole, the Court finds substantial evidence supported the ALJ's determination that Plaintiff was able to perform light work with numerous non-exertional limitations.

### 2.  Duty to develop the record

Plaintiff contends the ALJ failed to fulfill his duty to develop the record and issued a decision with an incomplete record. [ECF No. 18] More specifically, Plaintiff asserts "the record did not contain any medical evidence" addressing Plaintiff's physical ability to function in the workplace or all of the Plaintiff's medical records. Plaintiff argues the "ALJ noted in several places in the decision that records were missing despite [Plaintiff's] representative indicating the record

was complete, including records of Plaintiff's carpal tunnel surgery" and that the ALJ should have made additional inquiries into Plaintiff's missing medical records.  In response, the Commissioner asserts the ALJ developed the record to the extent possible given the distant time frame involved in Plaintiff's claim, particularly in light of counsel's assurances to the ALJ that the record was complete. [ECF No. 19] The Commissioner further contends that the record was adequate for the ALJ to consider Plaintiff's allegations and determine her limitations. [ECF No. 19]

The ALJ "has a duty to fully and fairly develop the evidentiary record." Byes v. Astrue, 687 F.3d 913, 915-16 (8th Cir. 2012). While the claimant is responsible for providing evidence to the SSA to determine RFC, the SSA is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." McCoy, 648 F.3d at 612.  "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Swink v. Saul, 931 F.3d 765, 770 (8th Cir. 2019) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

Here, the ALJ had medical records related to Plaintiff's impairments ranging from June 1999 through May 2021. Prior to the hearing, Plaintiff's representative advised the ALJ that the record was complete, that he had acquired the necessary records, and that "there's nothing else, to my knowledge, outstanding." (Tr.  35-36)

In the decision, the ALJ noted that two records related to Plaintiff's carpal tunnel syndrome were not in the record. (Tr.  19) This includes records from an October 2002 appointment with Dr.

Kitchens and records related to Plaintiff's carpal tunnel release performed in August 2008. (Tr. 19)  The ALJ observed, however, that Dr. Schlafly's 2004 report summarized the records from the October 2002 appointment and that Plaintiff testified to successfully undergoing the surgery in August 2008. Thus, the ALJ had the pertinent information that these records contained and Plaintiff does not set forth what additional information these records contained or how they would have influenced the ALJ's decision.  Despite the absence of these medical records, the record as a whole contained substantial evidence of Plaintiff's carpal tunnel syndrome and its treatment, and did not require further development for the ALJ to issue a decision.

As to Plaintiff's contention the record was incomplete because it "did not contain any medical evidence" addressing Plaintiff's physical ability to function in the workplace, the Court has already rejected this argument. The record contains the opinion of Dr. Gwartney, a State-agency non-examining consultant, as to Plaintiff's impairments and the resulting functional limitations. Although Dr. Gwartney did not have the benefit of reviewing all of the evidence when offering his opinion, the ALJ concluded that the medical evidence and other evidence in the record supported imposing additional functional limitations than suggested by that expert.

Given the substantial evidence in the record of Plaintiff's physical impairments, this is not a case in which a crucial issue was undeveloped and it was not necessary for the ALJ to obtain further evidence before issuing a determination.[14]

---

[14] The Court notes that remand for further development of the record would likely be futile. Plaintiff does not identify what additional medical records she believes are actually available and does not explicitly argue that the ALJ should have ordered a consultative examination, although this argument could be inferred from Plaintiff's brief.  [ECF No 18] The relevant three-month time period in this case, from April 7, 2008 through June 30, 2008, is now almost 15 years in the past. Nothing in the record suggests that recontacting Plaintiff's treating sources or the retroactive analysis of Plaintiff's physical impairments via the completion of a consultative exam would be practical or fruitful.  See Hendron v. Colvin, 767 F.3d 951, 957 (10th Cir. 2014) (recontacting the claimant's treating source would not assist in evaluating the claimant's RFC for a period more than 18 years prior); Salazar v. Barnhart, 180 Fed. Appx. 39, 50 (10th Cir. 2006) (remand for additional fact finding would serve no useful purpose because

3.   Evaluation of Plaintiff's Pain

Plaintiff argues the ALJ's decision does not make a proper pain evaluation because it fails to: (1) "address expressly each of the Polaski[15] factors," (2) make an express credibility determination, and (3) provide a sufficient rationale for discrediting Plaintiff's testimony.[16] [ECF No. 18] The Commissioner contends the ALJ properly evaluated Plaintiff's subjective reports of pain and disabling symptoms, including considering the lack of objective medical findings to support Plaintiff's allegations and Plaintiff's conservative treatment.

In determining the credibility of a claimant's subjective complaints, a court considers the following factors: 1) the claimant's daily activities; 2) the duration, intensity, and frequency of the symptoms; 3) precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints.  Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) and Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013).

---

it is unlikely that a medical or psychological professional would be able to prepare a retrospective analysis of the claimant's impairments).

[15] In Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit set forth factors the ALJ should consider when evaluating a claimant's credibility.

[16] Plaintiff also contends the ALJ's "conclusion that there is insufficient objective medical evidence to support Plaintiff's allegations of disabling symptoms was based upon a faulty determination that fibromyalgia was not a [medically determinable impairment][.]" [ECF No. 18] Because the Court finds in the succeeding section that the ALJ did not err in finding Plaintiff's fibromyalgia was not medically determinable, the Court need not address this argument.

Plaintiff alleged she was unable to work due to chronic pain, inflammation, fatigue, and weakness in her neck, shoulders, and arms which resulted in difficulty with sitting, standing, walking, lifting, squatting, bending, kneeling, climbing, and using her hands. (Tr.  18) The ALJ expressly found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" and provided a thorough rationale for discrediting Plaintiff's testimony.  (Tr.  18)

Although the ALJ did not expressly address each of the Polaski factors, he was not required to do so as long as he acknowledged and examined the factors before discounting the claimant's subjective complaints.  Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015); McDade, 720 F.3d at 998. The ALJ found Plaintiff's subjective complaints were not supported by the medical evidence, including objective testing and treatment notes frequently demonstrating unremarkable physical examinations, and Plaintiff's conservative treatment and work history. (Tr.  18-21)  As previously noted, the ALJ's decision includes a lengthy analysis detailing each of these factors and how they were inconsistent with Plaintiff's allegations of disabling pain and symptoms.  Furthermore, Plaintiff testimony that she (1) could lift only 10 pounds, (2) could stand for only 15 minutes, and (3) could not stand and walk in 15-minute increments, during the relevant time period was contradicted by Plaintiff's self-reported ability to work as an Avon representative standing and walking for 4 hours a day and frequently lifting 25 pounds.[17]

The Court finds the ALJ considered Plaintiff's subjective complaints within the context of the entire record and concluded that the record undermined the credibility of her claims of disabling symptoms. Because the ALJ's determination not to credit Plaintiff's subjective

---

[17] Notably, some of the evidence related to Plaintiff's disabling symptoms and activities of daily living appear in a functional report filed by Plaintiff with SSA in November 2019. (Tr.  321-325) This report appears to reflect Plaintiff's current abilities, providing little insight into Plaintiff's functioning 11 years prior in 2008.

complaints was supported by "good reasons and substantial evidence," the Court defers to his

determination.  See Gonzales, 465 F.3d at 894.

    C.  Fibromyalgia as a Severe Impairment

Plaintiff contends the ALJ erred by failing to find fibromyalgia to be a medically

determinable impairment. Plaintiff argues Dr. Speiser's examination confirmed a sufficient

number of positive trigger points to meet the 1990 ACR criteria and that the ALJ erred in finding

the identified trigger points did not meet the criteria without "enlist[ing] the assistance of a medical

expert[.]" [ECF No 18]   Plaintiff asserts the ALJ also erred by failing to identify in the

determination the number of positive trigger points he found  meet the criteria and failing to

"discuss the possibility" that Dr. Speiser identified a sufficient number of positive trigger points

to meet the criteria.  [ECF No. 18] Plaintiff further contends the ALJ erred in concluding the

diagnosis was provisional because Dr. Speiser's diagnosis was "retroactively confirmed by

subsequent rheumatologist treatment in May of 2009." [ECF No. 18] Plaintiff also argues the ALJ

incorrectly concluded that the impairment did not meet the durational requirement.

The Commissioner responds that the ALJ correctly found that the medical records did not

demonstrate that Plaintiff had the requisite number and location of trigger points to meet the 1990

ACR criteria as required by Social Security Ruling (SSR) 12-2p and that the ALJ was not required

to obtain the testimony of a medical expert before doing so. [ECF No. 19]  The Commissioner also

argues that the alleged error is harmless, in that the ALJ considered Plaintiff's myalgias in

determining Plaintiff's RFC.

Disability is defined as the "inability to engage in any substantial gainful activity [for at

least twelve months] by reason of any medically determinable physical or mental

impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A medically determinable impairment is one "that

results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "[P]roof of a disabling impairment must be supported by at least some objective medical evidence." Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992). "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider her medical condition as of the date she was last insured." Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007) (quoting Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997)).  "Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits may be rewarded.'" Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (quoting Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998)).

Social Security Ruling 12-2p provides guidance on how SSA evaluates fibromyalgia.  SSR 12-2p, 2012 WL 3104869, at * 1 (Soc. Sec. Admin. July 25, 2012). To establish fibromyalgia as a medically determinable impairment, the claimant must demonstrate (1) that a physician diagnosed fibromyalgia, (2) evidence described in Section II.A or II.B of SSR12-2p, and (3) that the physician's diagnosis is not inconsistent with other evidence in the record.  SSR 12-2p, 2012 WL 3104869, at * 2.

Section II.A of SSR 12-2p sets forth the 1990 ACR Criteria for the Classification of Fibromyalgia.[18] SSR 12-2p, 2012 WL 3104869, at * 2-3.  It states that a person has the medically determinable impairment of fibromyalgia if she has: (1) a history of widespread pain in all quadrants of the body (left and right side, above and below the waist) that has lasted for at least 3 months; (2) at least 11 positive tender points on physical examination; and (3) evidence that other

---

[18] Section II.B sets forth the 2010 ACR Preliminary Diagnostic Criteria.  SSR 12-2p, 2012 WL 3104869, at *3.  The ALJ also found Plaintiff failed to establish that she met this criteria but Plaintiff does not challenge the ALJ's determination on this issue. (Tr.  16)

disorders that could cause the symptoms or signs were excluded. SSR 12-2p, 2012 WL 3104869, at * 2-3.  There are 18 specified tender points: (a) occiput (base of the skull), (b) low cervical spine (back and side of the neck), (c) trapezius muscle (shoulder), (d) supraspinatus muscle (near the shoulder blade), (e) second rib (top of the rib cage near the sternum or breast bone), (f) lateral epicondyle (outer aspect of the elbow), (g) gluteal (top of the buttock), (h) greater trochanter (below the hip), and (i) inner aspect of the knee. SSR 12-2p, 2012 WL 3104869, at *3. The claimant's positive tender points must be found bilaterally and both above and below the waist. SSR 12-2p, 2012 WL 3104869, at *3.

The ALJ concluded Plaintiff did not have the medically determinable impairment of fibromyalgia because the record did not demonstrate that she meet the diagnostic criteria for establishing the disease. (Tr.  15-16) Specifically, the ALJ found Plaintiff failed to establish the diagnostic criteria of under Section II.A because the medical evidence showed a single provisional diagnosis on April 7, 2008 and the documented positive tender triggers points did not match those listed in SSR 12-2p. (Tr.  16) The ALJ noted there was no evidence of any other diagnosis or treatment for fibromyalgia in the relevant time frame or in the longitudinal history prior to that examination. (Tr.  16)  The ALJ further found that Plaintiff failed to meet the durational requirement for a severe impairment because she received only a provisional diagnosis shortly before the expiration of the relevant time period and Plaintiff's failure to follow-up or seek treatment until approximately a year later suggests the condition had no more than a minimal impact her ability to work such that it is non-severe. (Tr.  16)  Despite these findings, the ALJ stated he considered Plaintiff's "ongoing myalgias" in determining her residual functional capacity, specifically as to the finding of a light exertional level with additional postural and manipulative limitations, as well as limitations on exposure to vibration. (Tr.  16)

Dr. Speiser conducted an examination of Plaintiff on April 7, 2008, upon a referral by Plaintiff's primary care physician. (Tr. 603-604) Plaintiff's chief complaint was "'[p]ain all over' x 2 months[,]" stating the "aching all over her body" began in mid-February. (Tr. 603) Plaintiff's knees were swollen and she was experiencing pain in the muscles and joints in her neck, shoulder, elbows, wrists, hips, low back, lateral hips, thighs, and knees. (Tr. 603-04) Plaintiff had been on medication since 1999 for her low back pain but asserted her current pain was different. (Tr. 603) Dr. Speiser noted tenderness in the following trigger points: "trapezius, costochondral, deltoids, GTB, SI joints, medial knees and thighs." (Tr. 604) Dr. Speiser concluded that fibromyalgia was the "most likely diagnosis with multiple trigger points and muscle pain." (Tr. 604) Dr. Speiser adjusted Plaintiff's medication and directed her return for a follow-up in six weeks. (Tr. 604) Although the results of a previous blood test were "normal," including for rheumatoid arthritis, Dr. Speiser remarked "[w]e will also check [the level of thyroid-stimulating hormone] to rule out hypothyroidism and [creatine phosphokinase level] to rule out polymyositis." (Tr. 603-604)

Plaintiff contends the ALJ erred because the 14 positive trigger points noted by Dr. Speiser are "seemingly" included in the 18 trigger points listed in SSR 12-2p. Plaintiff asserts this was a "technical medical issue" that required the ALJ to seek "the assistance of a medical expert to determine if the areas identified by Dr. Speiser were sufficient to establish the fibromyalgia diagnosis." [ECF No. 18]

While some of the trigger points noted by Dr. Speiser either clearly or arguably fit within the prescribed criteria, at least 4 out of the 14 tender points he identified clearly do not. Specifically, Dr. Speiser identified tender points at Plaintiff's "deltoids" and "thighs," neither of which are included in the list of 18 acceptable trigger points listed in SSR 12-2p. Plaintiff presents no argument or evidence in support of a finding that these identified areas met the criteria of SSR

27

12-2p. Consequently, there is no support for a finding that Dr. Speiser identified 11 out of the 18 necessary tender point as set forth in SSR 12-2p or that the ALJ erred in finding Plaintiff failed to demonstrate that her fibromyalgia was medically determinable by establishing the criteria of SSR 12-2p.

Furthermore, Dr. Speiser's April 7, 2008 treatment notes also do not constitute sufficient evidence that he diagnosed Plaintiff with fibromyalgia, that Plaintiff's alleged widespread pain persisted for more than 3 months, or that other disorders which could cause the symptoms or signs were excluded. See SSR 12-2p, 2012 WL 3104869, at * 2-3.  The treatment notes reflect that Plaintiff's symptoms began in mid-February, less than two months before her appointment with Dr. Speiser. (Tr.  603)  Moreover, Dr. Speiser stated only that a diagnosis of fibromyalgia was "most likely" but that he would perform additional testing to rule out other conditions. (Tr.  604) Although Plaintiff was directed to follow up in six weeks, the record does not demonstrate any further appointments or treatment for this condition until more than a year later when Plaintiff went to Dr. Caciolo for a second opinion in May 2009. (Tr.  398-399)  Although Dr. Caciolo diagnosed Plaintiff with fibromyalgia, it was outside the insured period.[19] Thus, there is no medical evidence in the record to support a diagnosis of fibromyalgia before the expiration of the date last insured.  See Miller v. Berryhill, No. 4:16-CV-685 ACL, 2018 WL 1182926, at *5-6 (E.D. Mo. Mar. 7, 2018). In light of the Court's finding that the ALJ did not err in finding Plaintiff's alleged condition of fibromyalgia was not medically determinable, the Court need not address the remaining arguments related to this issue.

**VI.    Conclusion**

---

[19] Dr. Caciolo's treatment notes are also insufficient to establish Plaintiff met the criteria of SSR 12-2p, as they also do not demonstrate that Plaintiff had at least 11 positive tender points or include evidence that other disorders that could cause the symptoms or signs were excluded. See SSR 12-2P, 2012 WL 3104869, at *2-3. (Tr.  398-99)

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2023